UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Alliance Home Health Care and
Nursing Services, LLC; Hossam Moustafa;
Sahara Ismail; Sara Moustafa; and
Mohamed Moustafa,

        Plaintiffs,

v.

Rosemary Langley Melville,
Director, California Service Center, U.S.
Citizenship and Immigration Services;
Alejandro Mayorkas, Director, U.S.
Citizenship and Immigration Services;
Eric Holder, Attorney General of the
United States; and Janet Napolitano,
Secretary, U.S. Department of Homeland
Security,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 11-2447 ADM/JSM

___

Herbert A. Igbanugo, Esq., Igbanugo Partners Int'l Law Firm, PLLC, Minneapolis, MN, on behalf of Plaintiffs.

Cara M. Sims, Esq., U.S. Department of Justice, Washington, D.C., and Mary J. Madigan, Esq., United States Attorney's Office, Minneapolis, MN, on behalf of Defendants.

___

## I. INTRODUCTION

On February 3, 2012, the undersigned United States District Judge heard oral argument on Defendants Rosemary Langley Melville ("Melville"), Alejandro Mayorkas ("Mayorkas"), Eric Holder ("Holder"), and Janet Napolitano's ("Napolitano") Motion for Summary Judgment and Motion to Dismiss [Docket No. 6] ("Defendants' Motion"). This Court also heard oral argument on Plaintiffs Alliance Home Health Care and Nursing Services, LLC ("Alliance"), Hossam Moustafa, Sahara Ismail, Sara Moustafa, and Mohamed Moustafa's (collectively

"Plaintiffs") Motion for Summary Judgment [Docket No. 11] ("Plaintiffs' Motion"). Based on the reasons stated below, Defendants' Motion is granted and Plaintiffs' Motion is denied.

## II. BACKGROUND[1]

Alliance is a Minnesota home health care agency. Compl. ¶ 13. Hossam Moustafa, his spouse Sahar Ismail, and his two children Sara and Mohamed Moustafa are all citizens of Egypt. Id. ¶ 14. Melville is the Director of the United States Customs and Immigration Services' ("USCIS") California Service Center, Mayorkas is the Director of USCIS, Holder is the Attorney General of the United States, and Napolitano is the Secretary of the Department of Homeland Security ("DHS"). Id. ¶¶ 15–18.

Hossam Moustafa and his family entered the United States with the nonimmigrant status of an E-2 Treaty Investor,[2] which expired on November 24, 2010. Id. ¶ 19; Compl. Ex. 3. Prior to the expiration, on October 4, 2010, Alliance filed a Form I-129 Petition on behalf of Hossam Moustafa, seeking to change his nonimmigrant E-2 status to that of an H-1B "specialty occupation" worker. Compl. ¶ 24; Compl. Ex. 4. That same day, Hossam Moustafa's family members, or derivative beneficiaries, also filed Form I-539 applications to change their status from E-2 to H-1B status. Compl. ¶ 25; Compl. Ex. 6. USCIS issued a Request for Evidence ("RFE") on December 13, 2010, seeking further documentation demonstrating that Hossam

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). As both parties are moving for summary judgment, disputed facts will be noted.

[2] An E-2 Treaty Investor is designed for a nonimmigrant who has "invested or is actively in the process of investing a substantial amount of capital in a bona fide enterprise in the United States," is seeking a visa "solely to develop and direct the enterprise," and plans to "depart the United States upon the expiration or termination" of the E-2 status. 8 C.F.R. § 214.2(e)(2).

Moustafa qualified as a specialty occupation worker.  Compl. ¶ 25; Compl. Ex. 7.  Alliance timely submitted more documentation to USCIS on January 21, 2011.  Compl. ¶ 27.  On February 28, 2011, USCIS denied Alliance's H-1B Petition and the concurrently filed I-539 applications, finding that Alliance failed to show that the proffered position qualified as a "specialty occupation" for H-1B purposes.  Id. ¶ 28; Compl. Ex. 9.

On April 14, 2011, Alliance filed a second H-1B petition for Hossam Moustafa, and his family filed Form I-539 applications the same day.  Compl. ¶¶ 29–30.  This second H-1B petition included more documentation than the first application regarding the nature of the job, Moustafa's qualifications, and a Professional Position Evaluation, but USCIS issued another RFE on April 21, 2011.  Id. ¶¶ 31–35; Compl. Ex. 11.  The April 21, 2011 RFE requested a more detailed job description, a comparison of Alliance's business complexity with other businesses in the industry, an organization chart, a description of the accounting system, and additional evidence that the position qualified as a specialty occupation.  Compl. ¶¶ 38–49.

Alliance filed a response to the RFE on May 31, 2011.  Id. ¶ 37.  Responding to the RFE's job description request, Alliance provided two letters from Alliance's owner Robin Nyangena, one discussing the specific job duties and the other stating the cost-saving measures of hiring an in-house accountant.  Id. ¶ 39.  Regarding the nature of Alliance's business, Alliance responded by filing documentation stating that a baccalaureate degree is common to the industry in parallel positions.  Id. ¶ 41.  To the organization chart request, Alliance supplied an organization chart as well as Alliance's Policies and Procedures Manual.  Id.  In response to USCIS's request for a detailed description of the accounting system, Alliance filed a letter from a CPA consultant detailing the accounting services his company provides and the annual costs of

those services. Id. ¶ 46. Alliance responded to USCIS's request for evidence of a specialty occupation by submitting the following exhibits: (1) a Form ETA-9035 and Foreign Labor Certification filed with the Department of Labor listing the job title as "Accountant"; (2) a copy of the 2010-2011 Occupational Outlook Handbook describing the occupation of "Accountants"; (3) a D.O.T. document confirming that "Accountant" is a professional level position; (4) a company letter from Alliance's owner Robin Nyangena; (5) expert opinions from Dr. Andrew C. Spieler, Dr. Brian Nagle, and Agron Matoshi detailing the typical requirements of an accountant; (6) documentation showing that a baccalaureate degree is common to the position of "accountant"; (7) confirmation that Hossam Moustafa belonged to the National Accounting Organization; and (8) copies of Hossam Moustafa's resume, degree, transcripts, credential evaluation, Form I-94, passport, previous I-797s showing status, and pay-stubs. Id. ¶ 49.

On June 15, 2011, USCIS denied the H-1B petition in a seven-page Notice of Decision. Id. ¶ 50; Compl. Ex. 1. USCIS identified as reasons for the denial: (1) the evidence failed to establish that Alliance engaged in the type of business typically requiring a regular accountant, Compl. Ex. 1 at 4; (2) insufficient evidence was offered to establish that the home health care services industry does "routinely employ and recruit only degreed individuals in the proffered position," id. at 5; (3) Alliance "submitted insufficient documentation that the proffered position would involve duties seen as either unique or complex that only an individual with a degree in a specific specialty could perform them," id. at 6; (4) Alliance failed to submit documentation "with regard to other employees hired in similar positions, or that the position has, in the past, required the services of individuals with baccalaureate or higher degrees in a specific specialty," id.; and (5) Alliance has provided insufficient information regarding the specialized and complex

nature of the position, id. at 7.

On August 25, 2011, Hossam Moustafa filed this Complaint [Docket No. 1]. Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on November 21, 2011, and Plaintiffs filed a Motion for Summary Judgment on December 20, 2011.

### III.  DISCUSSION

#### A.  Standard of Review

##### 1.  Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(c)).[3]  On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  Ludwig, 54 F.3d at 470.  The nonmoving party, however, may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

##### 2.  Motion to Dismiss

A motion to dismiss a complaint for failure to state a claim is governed by Rule 12 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6) motion, the court views the pleadings in the light most favorable to the nonmoving party and treats the alleged facts as true.  See Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Conclusions of law made by the nonmoving party, however, are not "blindly accept[ed]."

---

[3] The summary judgment standard was previously located in Rule 56(c).

Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). A Rule 12(b)(6) motion to dismiss is granted when the factual allegations, even assumed to be true, do not entitle that party to relief. See, e.g., Taxi Connection v. Dakota, Minn. & E. R.R. Corp., 513 F.3d 823, 826-27 (8th Cir. 2008).

Pleadings must "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8(a) has been interpreted to mean that a pleading must allege "enough facts to state a claim of relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To satisfy the standard of facial plausibility, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). This plausibility determination is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

### 3. Review of USCIS Decision

The standard of review for an agency decision under the Administrative Procedure Act ("APA") is whether the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); United States v. Bean, 537 U.S. 71, 77 (2002). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983). The agency must articulate

a "rational connection between the facts found and the choice made." Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 286–87 (1974) (citation omitted).

### B.  USCIS Decision

Plaintiffs argue no material facts are in dispute, that USCIS applied a higher standard of evidence than preponderance of the evidence, and that Defendants' denial of the I-129 and I-539 applications was "unlawful, oppressive and an arbitrary and capricious abuse of power."  Pls.' Mem. in Supp. of Mot. for Summ. J. [Docket No. 13] 15–16.   Defendants aver that Plaintiffs fail to state a claim upon which relief can be granted, and that no genuine issue exists because the agency's decision was based on a rational consideration of relevant factors, and that the decision was not in clear error.  See Mem. in Supp. of Defs.' Mot. [Docket No. 8].  These arguments are discussed below.

#### 1. Specialty Occupation

Employers may file an H-1B petition for a nonimmigrant arriving in the United States to temporarily perform services in a specialty occupation. 8 U.S.C. §§ 1101, 1184(c). 8 U.S.C. § 1184(i) defines "specialty occupation" as a job which requires a "theoretical and practical application of a body of highly specialized knowledge," and "attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." Id.; see also 8 C.F.R. § 214.2(h)(4)(i)(A)(1). To qualify as a specialty occupation, a position must meet one of the following criteria:

> 1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
> 2) The degree requirement is common to the industry in parallel positions among similar organizations, or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

> 3) The employer normally requires a degree or its equivalent for the position; or
> 4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A). The petitioner bears the burden of proving that the worker qualifies for the relief sought by satisfying a two-prong test: (1) that the position sought qualifies as a specialty occupation; and (2) that the alien is qualified to perform services in the occupation. Shanti, Inc. v. Reno, 36 F. Supp. 2d 1151 (D. Minn. 1999).

Defendants denied Plaintiffs' applications based on the finding that the proffered position was not a specialty occupation. The parties agree only 8 C.F.R. § 214.2(h)(4)(iii)(A)(1, 2, and 4) are at issue in Plaintiffs' Complaint. See Pls.' Mem. in Supp. of Mot. for Summ. J. 6.

### a. A Bachelor's Degree is Not Normally the Minimum Industry Entry Requirement for the Proffered Position

Plaintiffs contend that Alliance offered evidence establishing that a bachelor's degree or higher is normally the minimum requirement for an accountant in the home health care industry, thus satisfying 8 C.F.R. § 214.2(h)(4)(iii)(A)(1). However, the Notice of Decision clearly stated that it considered and rejected this argument by applying the job descriptions listed in the United States Department of Labor's Occupational Outlook Handbook. Compl. Ex. 1 at 4. The Notice of Decision stated that Alliance did "not claim to be a public accounting firm, a payroll services firm, a tax preparation firm, a computer accounting systems or software developer, a governmental agency, or an academic institution," and that Alliance's lack of an accounting department and its small staff size (forty-nine employees) did not establish that the proffered position would require services beyond bookkeeping, accounting, or auditing clerk services. Id. The organizational chart provided by Plaintiffs shows no accounting employees under the

proffered position; indeed, it shows no other employees in the Accounting Department. Id. USCIS explained in the Notice of Decision that the proffered position, despite its title of "Senior Accountant," was not that of a senior accountant-controller — a position requiring at least a bachelor's degree — but rather that of a junior accountant, which could be performed by "graduates of junior colleges or business or correspondence schools," an educational level below that required for a specialty occupation. Id. at 5. Because Defendants showed a rational connection between the facts found and the decision made, the decision that Alliance's accountant position did not constitute a specialty occupation was neither arbitrary nor capricious.

### b. A Bachelor's Degree is not a Common Industry Degree Requirement for the Proffered Position, and that Position is Neither Complex Nor Sufficiently Unique to Require Such a Degree

Plaintiffs aver they provided proof that a bachelor's degree was a common industry requirement. Specifically, they offered two expert opinion letters, thirteen job postings from similar organizations, and a letter from Alliance's current CPA firm to prove that similar size companies routinely require a bachelor's degree for a Senior Accountant position. Although Plaintiffs submitted job postings, the Notice of Decision found that "[m]any of [the] job listings appear to be from employers dissimilar to the petitioner's organization," citing Robert Half Finance & Accounting and Eastern Virginia Medical School as some of these dissimilar job postings offered by Plaintiffs. Compl. Ex. 1 at 6. Additionally, the Notice of Decision discounts the two expert opinion letters from professors Brian Nagle and Andrew Spieler, noting that the evidence doesn't show the professors are "associated with the petitioner's industry" of home health care and that insufficient evidence was offered as to the professors' education or their basis for their opinions. Id. Further, USCIS points out that the Notice of Decision found that the

letter from Alliance's current CPA firm, CPA Consulting, LLP, indicated that "many of the accounting duties that are going to be delegated from CPA Consulting, LLP to the proffered position do not meet the requirements for a specialty occupation accounting position." Id. Given this reasoned analysis drawn from the record, Defendants' decision on this basis was not arbitrary or capricious.

As to the complexity and uniqueness of the position, Plaintiffs insist that they provided ample information to establish that this proffered position required at least a bachelor's degree. Plaintiffs cite the Professional Position Evaluation from Dr. Andrew Spieler which stated that "The educational requirements, calling for a minimum of a baccalaureate degree and job duties of the proffered position clearly mark the position as a 'specialty occupation,' requiring a bachelor's-level background in business, accounting, or a related field." Compl. Ex. 14A ("Proffered Position Evaluation") at 46. The Notice of Decision found otherwise, finding that the opinion letter fails to state the basis for its opinion. The Notice of Decision found insufficient evidence was offered by Plaintiffs to show the complexity or uniqueness of the position. Additionally, the issue was not what minimum education would be required for Plaintiffs' title of the proffered position — "Senior Accountant" — but rather what education would be required for a position that USCIS deemed a "Junior Accountant" or "Bookkeeper" position. Because the determination of USCIS that Alliance's accountant position was not a specialty occupation was rationally based on the evidence, it is not arbitrary or capricious and will not be overturned.

### c. The Proffered Position Does Not Include Specialized and Complex Job Duties Requiring a Bachelor's Degree

Plaintiffs also argue they established that the proffered position was so "specialized and complex that knowledge required to perform the duties is usually associated with attainment of baccalaureate or higher degree." 8 C.F.R. § 214.2(h)(4)(iii)(A)(4). To support their argument, Plaintiffs offered a letter from Robin Nyangena, the owner of Alliance, who wrote that an in-house senior level accountant would save costs by performing complex and advanced accounting duties. Compl. Ex. 14B at 40–41. Plaintiffs also proffered an organizational chart to show that its forty-nine employees and 250–300 clients required the use of a Senior Accountant. Id. at 43.

The Notice of Decision, however, noted Plaintiffs' numerous case citations, finding them non-binding and inapplicable, and determined that Alliance had "placed insufficient information on the record with regard to the specialized and complex nature of the proffered position." Compl. Ex. 1 at 7. Specifically, Plaintiffs cited numerous federal district court decisions to support their H-1B petition, but the Board of Immigration Appeals has held that it is not bound to follow federal district court precedent, only that of circuit courts. Matter of K-S, 201 I. & N. Dec. 715 (BIA 1993). Moreover, the Notice of Decision stated that "each petition filing is a separate proceeding with a separated record," so Plaintiffs' citations of district court and Administrative Appeals Office ("AAO") decisions are of limited applicability. Compl. Ex. 1 at 7. Most importantly, Defendants note that the case citations and the record do not establish the complex and specialized nature of the proffered position. Id.

This is not to suggest that this Court would have reached the same determination if reviewing this application in the first instance. However, this Court may not substitute its

judgment for that of USCIS.  See Motor Vehicle Mfrs. Ass'n of U.S., Inc., 463 U.S. at 43.  The Notice of Decision reflects the reasoned determination of USCIS that the proffered position was not a specialty occupation, and that determination was neither arbitrary nor capricious.  Because USCIS's decision was not arbitrary or capricious, Plaintiffs' Motion is denied and Defendants' Motion is granted.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment [Docket No. 6] is **GRANTED**; and

2. Plaintiffs' Motion for Summary Judgment [Docket No. 11] is **DENIED**; and

3. Plaintiffs' Complaint [Docket No. 1] is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

      s/Ann D. Montgomery      
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 20, 2012.